# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

SHARON YOUNG, Ph.D.                                                     PLAINTIFF

v.                          No. 4:17CV00858 JLH

UNIVERSITY OF ARKANSAS
SYSTEM, *et al*.                                                     DEFENDANTS

## OPINION AND ORDER

Dr. Sharon Young works as an instructor at the University of Arkansas at Pine Bluff. She brought this action against the University of Arkansas System, the University of Arkansas at Pine Bluff, and various individuals working at the University of Arkansas of Pine Bluff. Her complaint mentions "discrimination based upon sex, age, disability and retaliation." *See* Document #9 at 1. It references Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, 42 U.S.C. § 1981, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The defendants move for summary judgment on all claims. Their motion is granted.

Young began working at the University in 2010 as an Assistant Professor of music courses. She applied for tenure in 2015. Although she received favorable reviews from her department-level colleagues, the university-wide tenure committee recommended denial based largely on her lack of scholarship since joining the University. In April 2016, Young hurt her foot, although she sustained no significant injuries. She then fractured it the following August. Soon afterwards she stopped taking the stairs upon her doctor's order, and because her regular classrooms were on the second floor, Young requested a workplace accommodation. The next business day Young contacted Karen Baker, the University's ADA Coordinator, who responded the same day. Baker and others at the University worked with Young over the course of months to accommodate Young in various ways,

such as providing remote access to the second-floor classrooms via Skype, allowing her to instruct small classes out of a vacant office on the music building's first floor, and making first-floor classrooms in other University buildings besides the music building available to her. *See* Document #13 at 10-11; Document #19 at 5-6. Young testified in deposition that there are no accommodations that she has sought from the University, other than an elevator, that she has not received. *See* Document #11-10 at 33.[1]

In fall 2016, Young reapplied for tenure. Between the two applications Young's intervening scholarship consisted of the acceptance of a presentation for lecture and publication, although to this day neither has occurred; reminding a scholarly journal that she had submitted a draft; and submitting an editorial to an education news organization, although it was not published. *See* Document #13 at 4-5. Young says she also presented several local lectures as well as one in Alabama, although she cites nothing in the record to support these allegations. *See* Document #19 at 3. In response to her application, once again Young's department colleagues recommended tenure but the university-wide tenure committee denied it, citing similar scholarship concerns it had as the previous year. The parties agree that reasonable, well intentioned people could have different opinions about the quality of Young's scholarship. *See* Document #13 at 7; Document #19 at 4. In spring 2017, the University offered Young an instructor position at the same salary that she previously made. She accepted and continues to maintain this position.

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that

---

[1] The University is currently installing elevators in the music building. *See* Document #13 at 11.

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A movant meets its "far from stringent" initial burden if it points out that there is an absence of evidence to support the nonmoving party's case. *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). Once this is done, the nonmoving party must submit evidentiary materials showing there is a genuine issue for trial. *Id.* at 997. A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

First, Young's complaint lists as defendants "the University of Arkansas System" and "the University of Arkansas at Pine Bluff." The University of Arkansas at Pine Bluff is not capable of suing or being sued as it is a campus and not an institution or corporate body. *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 n.2 (8th Cir. 2009) (dismissing the University of Arkansas for Medical Sciences as it is only a campus); *Bass v. Univ. of Ark. at Pine Bluff*, 5:12-cv-00286-KGB, 2014 WL 4630459 at *4 (E.D. Ark. Sept. 16, 2014) (dismissing the University of Arkansas at Pine Bluff as it is a campus). The defendants point out that "the University of Arkansas System" is not a campus or a recognized institution. The Court agrees, and Young does not attempt to refute this point. Summary judgment is therefore granted on all claims against the University of Arkansas at Pine Bluff and the University of Arkansas System.

Second, Young has sued six individuals: Donald R. Bobbitt, President; Laurence B. Alexander, Chancellor; Andrea Stewart, Dean of Arts & Science; Jacquelyn McCray, Vice Chancellor; Michael Bates, Interim Department Chair; and Richard Bailey, Department Chair. Document # 9 at 1-2. Her complaint does not mention the capacity in which she sues them. Young

has therefore only asserted official-capacity claims against these individuals. *Baker v. Chisom*, 501 F.3d 920, 923-24 (8th Cir. 2007).

Third, the Eleventh Amendment to the United States Constitution bars suit for damages against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985). The jurisdictional bar applies when state officials, such as the individuals named here, are sued in their official capacities. *Id.* Young cannot recover damages in this case.

Fourth, Young's complaint mentions 42 U.S.C. § 1981. This statute prohibits, in certain contexts, discrimination based on race. *See Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989) (per curiam). This case has never been about race discrimination, however, but alleged age, sex, and disability discrimination and retaliation. Young's complaint does not mention race. Summary judgment is granted on Young's asserted 42 U.S.C. § 1981 claim.

Fifth, Young mentions the Age Discrimination in Employment Act and alleges that she is more than fifty years old. However, the ADEA requires a plaintiff to exhaust her administrative remedies with the EEOC before filing suit. *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005). Young concedes that she never filed an EEOC charge of discrimination with respect to age. Document #13 at 12; Document #19 at 7. The record shows that she did not do so. Document #11-8 & 11-9. Summary judgment is granted on Young's ADEA claim for failure to exhaust.

Remaining, therefore, are Young's claims for discrimination, based on disability and sex, as well as retaliation, against the named individuals in their official capacities.[2] Young says that the

---

[2] Young's complaint mentions the First, Fourth, Fifth, and Fourteenth Amendments. *See* Document #9 at 1. Because Young repeatedly mentions sex discrimination, the Court infers that her claim relating to the Fourteenth Amendment is a claim under 42 U.S.C. § 1983 for sex discrimination under the Fourteenth Amendment's equal protection clause. The analysis is essentially the same when a plaintiff alleges both Title VII and § 1983 claims based on equal

4

University failed to accommodate her disability and that, after she requested accommodations and filed an EEOC complaint, the University retaliated against her by denying her tenure. These claims fail as a matter of law. The undisputed facts show that the University did accommodate Young. On her ADA retaliation claim, Young's prima facie case fails for lack of causation. Finally, Young's sex discrimination claim fails because the University has proffered a legitimate nondiscriminatory reason for denying her tenure, and Young has not demonstrated that the reason was pretextual.

The ADA prohibits discrimination against a "'qualified individual with a disability' because of the disability." *Scruggs v. Pulaski Cnty., Ark.*, 817 F.3d 1087, 1092 (8th Cir. 2016) (quoting *Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012)). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A); *see also Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) ("The ADA requires employers to make reasonable accommodations to allow disabled individuals to perform the essential functions of their positions.").

Any failure to accommodate claim fails because the parties agree that the University did reasonably accommodate Young. Although Young's complaint states that the University failed to reasonably accommodate her, Document #9 at 4, she admits in response to summary judgment that "[b]y using the various accommodations that [the University] has provided to date, Dr. Young has

---

protection violations, and therefore the Court will analyze Young's § 1983 claim along with her Title VII claim. *See Tipler v. Douglas Cnty., Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007). Young's complaint does not elaborate whatsoever on how her other constitutional rights were allegedly violated and she does not divide her complaint into separate counts, which might allow the Court to infer the factual basis for these claims. Any claims for First, Fourth, and Fifth Amendment violations are therefore dismissed.

been able to perform the essential functions of her job," Document #13 at 11; Document #19 at 6. *See Kiel*, 169 F.3d at 1137 (holding failure to accommodate claim failed where employer provided an accommodation that allowed plaintiff to perform the essential functions of his position). Summary judgment is therefore granted on Young's failure to accommodate claim.

Young alleges that the defendants denied her tenure in retaliation for requesting accommodations and filing a discrimination claim. For ADA retaliation, absent direct evidence, Young must show that she engaged in statutorily protected activity, that her employer took an adverse action against her, and that there was a causal connection between the two. *Scruggs*, 817 F.3d at 1094. If Young meets her burden, the employer must show a legitimate, nondiscriminatory reason for the adverse action. *E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir. 2014). If the employer does so, the burden then shifts back to Young to show the given reason was actually a pretext. *Id.*

The first two elements are met: Young engaged in protected activities by requesting an accommodation and filing a discrimination claim, and she was denied tenure, which is an adverse employment action. *Okruhlik v. Univ. of Ark.*, 395 F.3d 872, 879 (8th Cir. 2005). She has not shown, however, that either of her protected activities were the but-for cause for the denial of tenure. *See Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016). In her response to the University's statement of undisputed facts supporting its motion for summary judgment, Young has pointed to no record citations to support any of her factual denials. She has provided an affidavit, but her affidavit does not connect her disability and the denial of tenure. *See generally* Document #20. Instead, in her affidavit, Young contradicts other unrelated facts and takes issue with the merits of

the tenure committee's academic decision to deny her application for tenure.[3] Because Young has not drawn any connection between her protected activities and her denial of tenure, summary judgment is proper on this claim as she has failed to raise facts sufficient to show causation.

Finally, Young mentions sex discrimination in her complaint. The only allegations supporting this claim are that (a) she is female, (b) the University allowed male colleagues to advance while denying her the opportunity to do so, and (c) a male instructor who had less experience than Young received tenure. *See* Document #9 at 2, 5.

Absent direct evidence, a plaintiff's sex discrimination claim may survive summary judgment under the *McDonnell Douglas* burden-shifting framework. *See Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 746 (8th Cir. 2009). If she establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* If it does so, then the plaintiff must demonstrate that the proffered reason was a pretext for sex discrimination. *Id.*

Young does not allege or point to any direct evidence of sex discrimination. In response to summary judgment, Young has pointed to nothing in the record and has put forth no evidence that gender played any role whatsoever in the denial of her tenure. In her deposition, Young stated that she has no reason to believe she was discriminated against on the basis of sex, besides the fact that the women on the tenure committee were against awarding her tenure, while the men on the committee were in favor of it. *See* Document #11-10 at 13. Nevertheless, assuming, without deciding, that Young has made a prima facie case of sex discrimination, the Court turns to the

---

[3] Again, Young frankly concedes that reasonable, well-intentioned people could disagree about the quality of her scholarship. *See* Document #13 at 7; Document #19 at 4.

University's proffered legitimate nondiscriminatory reason for denying her tenure: that she was unqualified. *See Qamhiyah*, 566 F.3d at 746 (assuming a prima facie case, and proceeding directing to the second *McDonnell Douglas* step).

The record supports the decisionmakers' reasons as legitimate grounds to deny Young tenure. It is undisputed that at the University, professors are evaluated on scholarship, teaching, and service. Scholarship refers to scholarly publications, grant-funded research, and creative works. Document #13 at 1-2; Document #19 at 2. It is further undisputed that Young was denied tenure the first year she applied based on scholarship deficiencies. Document #13 at 3; Document #19 at 2. Over the course of the following year, Young's additional scholarship was minimal. *See* Document #14 at 4-5; Document #19 at 3. Her denial in 2016 was also based upon minimal evidence in research, creative activity, and scholarship. Although her own department recommended tenure when she applied both times, everyone else involved in the decision recommended against it. Document #13 at 5-6, Document #19 at 4. The record supports the University's reasoning as legitimate, nondiscriminatory grounds to deny tenure. *See Qamhiyah*, 566 F.3d at 746 (noting that the record supported university's reasons for denying tenure, especially given a defendant's "non-onerous" burden of production).

In her response to summary judgment, Young has made no showing that this legitimate nondiscriminatory reason was a pretext for discrimination. Indeed, "in the tenure context . . . the plaintiff's evidence of pretext must be of such strength and quality as to permit a reasonable finding that the denial of tenure was obviously unsupported." *Id.* at 747 (quoting *Kobrin v. Univ. of Minn.*, 121 F.3d 408, 414 (8th Cir. 1997)). Young has not provided any evidence showing that the denial

8

of tenure was obviously unsupported. Summary judgment must be granted on Young's sex discrimination claims under Title VII and § 1983. *See supra* note 2.

For the foregoing reasons, the motion for summary judgment filed by the defendants is GRANTED. Document #11.

IT IS SO ORDERED this 10th day of January, 2019.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE